

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00427-CR

**WILLIAM DAVID BRUMBALOW,**

                                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                **Appellee**

---

**From the 220th District Court**
**Hamilton County, Texas**
**Trial Court No. CR07663**

---

# O P I N I O N

---

A jury convicted Appellant William David Brumbalow of aggravated assault against a public servant and assessed his punishment at forty years' imprisonment. This appeal ensued.

### Lesser-Included-Offense Instruction

In his first issue, Brumbalow contends that the trial court erred in overruling his request for a lesser-included instruction on the offense of misdemeanor resisting arrest.

Appellate review of alleged jury-charge error involves a two-step process.

*Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, the court must determine whether error actually exists in the charge. If error is found, the court must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731-32.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included-offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). First, the lesser offense must be a lesser-included offense of the charged offense as defined by article 37.09 of the Code of Criminal Procedure. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); *see* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). Article 37.09 provides:

> An offense is a lesser included offense if:
>
> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09. Second, there must be some evidence in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734,

741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672-73.

The State concedes that the first step of the lesser-included-offense analysis is satisfied; however, we must conduct an independent examination of the merits of the claim of error. *See Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002). The first step in the lesser-included-offense analysis, determining whether an offense is a lesser-included offense of the charged offense, is a question of law. *Hall*, 225 S.W.3d at 535. It does not depend on the evidence produced at trial. *Id.* To determine if the lesser offense is a lesser-included offense of the charged offense, we instead compare the elements of the charged offense, as modified by the particular allegations in the indictment, against the elements of the lesser offense. *Wortham v. State*, 412 S.W.3d 552, 555 (Tex. Crim. App. 2013); *Hall*, 225 S.W.3d at 536.

The indictment alleged that Brumbalow:

did then and there intentionally or knowingly threaten Lance McLean with imminent bodily injury by displaying a knife, and did then and there use or exhibit a deadly weapon, to-wit: a knife, during the commission of said assault, and the defendant did then and there know that the said Lance McLean was then and there a public servant, to wit: a Hamilton County Sheriff's Deputy, and that the said Lance McLean was then and there lawfully discharging an official duty, to-wit: arresting defendant.

The elements of aggravated assault against a public servant, as modified by the indictment, are therefore:

(1) A person

(2) intentionally or knowingly

(3) threatened another with imminent bodily injury;

(4) used or exhibited a deadly weapon during the commission of the assault; and

(5) knew that the person upon whom he committed the aggravated assault was a public servant

(6) while the public servant was lawfully discharging an official duty.

*See* TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2013), § 22.02(a)(2), (b)(2)(B) (West 2011).  The elements of misdemeanor resisting arrest are:

(1) A person

(2) intentionally

(3) prevented or obstructed a peace officer from effecting an arrest,

(4) knowing the person was a peace officer,

(5) by using force against the peace officer or another.

*See id.* § 38.03(a) (West 2011).

A comparison of these elements demonstrates that the first step of the lesser-included-offense analysis is not satisfied.  The elements of misdemeanor resisting arrest require at least one element that the elements of aggravated assault, as modified by the indictment, do not—using force against a peace officer.  *See Petersen v. State*, 01-11-00740-CR, 2012 WL 2106720, at *2 (Tex. App.—Houston [1st Dist.] Jun. 7, 2012, no pet.) (mem. op., not designated for publication); *Dunklin v. State*, 194 S.W.3d 14, 22 (Tex. App.—Tyler 2006, no pet.); *Potts v. State*, No. 03-05-00009-CR, 2006 WL 664211, at *4 (Tex. App.—Austin Mar. 17, 2006, pet. ref'd) (mem. op., not designated for publication); *Schreyer v. State*, No. 05-03-01127-CR, 2005 WL 1793193, at *8 (Tex. App.—Dallas Jul. 29, 2005, pet. ref'd) (not designated for publication).  Thus, the offense of misdemeanor resisting arrest is not a lesser-included offense of the charged offense of aggravated

assault against a public servant according to article 37.09 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09; *Moore*, 969 S.W.2d at 8. Because the first step of the lesser-included-offense analysis was not met, we need not discuss the second step.

Brumbalow notes that the trial court gave a lesser-included-offense instruction on felony resisting arrest and that misdemeanor resisting arrest is a lesser-included offense of felony resisting arrest. The issue in this case, however, is whether misdemeanor resisting arrest is a lesser-included offense of the *charged* offense, which is aggravated assault against a public servant. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09. Brumbalow also supports his position by citing to this Court's majority opinion in *Campbell v. State*, 128 S.W.3d 662 (Tex. App.—Waco 2003, no pet.), in which the majority concluded that *felony* resisting arrest was a lesser-included offense of aggravated assault by threat against a public servant. *Id.* at 670-72. However, to the extent our holding in this opinion conflicts with the majority opinion in *Campbell*, we overrule it. We overrule Brumbalow's first issue.

## Sufficiency of the Evidence

In his second issue, Brumbalow contends that the evidence is insufficient to prove that the knife he possessed was used as a deadly weapon. We disagree.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that

> evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

A person commits an assault if he intentionally or knowingly threatens another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(2). The assault is aggravated if the person uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(2). The offense is a first-degree felony if it is committed against a

person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *Id.* § 22.02(b)(2)(B).

A deadly weapon is: "(A) a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17) (West Supp. 2013). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). "Bodily injury" is "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8).

It is a well-settled rule of Texas criminal jurisprudence that a knife is generally not a deadly weapon *per se* or by design. *See Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991); *Nickerson v. State*, 69 S.W.3d 661, 670 (Tex. App.—Waco 2002, pet. ref'd); *see also* TEX. PENAL CODE ANN. § 1.07(a)(17)(A). A knife can be a deadly weapon, however, if in the manner of its use or intended use it was capable of causing death or serious bodily injury. *See Thomas*, 821 S.W.2d at 620; *Nickerson*, 69 S.W.3d at 670; *see also* TEX. PENAL CODE ANN. § 1.07(a)(17)(B). To determine whether a knife is a deadly weapon in the manner of its use or intended use, we examine the following factors: (1) the knife's size, shape, and sharpness; (2) the manner of the knife's use or intended use; (3) the nature or existence of inflicted wounds; (4) testimony of the knife's life-threatening capabilities; (5) the physical proximity between the victim and the knife; and (6) the words spoken by the appellant. *Rivera v. State*, 271 S.W.3d 301, 304 (Tex.

App.—San Antonio 2008, no pet.); *Lowe v. State*, 211 S.W.3d 821, 827 (Tex. App.—Texarkana 2006, pet. ref'd); *Nickerson*, 69 S.W.3d at 670.

The relevant evidence presented in this case was as follows: Hamilton County Sheriff's Investigator Lance McLean testified that on April 11, 2011, he responded to a disturbance call at a residence in Hamilton. He saw a pickup truck turn into the driveway of the residence and two men get out of the truck and enter the house through a door on the north side. McLean pulled into the driveway behind the pickup, got out of his vehicle, and walked up to the door. He was wearing a leather gun rig with a Hamilton County Sheriff's badge on the belt. McLean also announced "Hamilton County Sheriff's Office" two or three times before he went inside the residence.

McLean testified that when he went inside the residence, he saw three men in the kitchen—Brumbalow, whom he knew by sight and was aware had an outstanding warrant; S. L. Brewer, whom he also knew; and Jeff David Brumbalow (Jeff), whom he did not know but later identified. McLean immediately asked Brumbalow if there was anyone else in the residence, and Brumbalow replied that there was not. McLean quickly went into the living room and looked in the door of another bedroom but did not see anyone else, so he came back to the kitchen where Brumbalow was leaning against the kitchen bar.

McLean testified that he asked Brumbalow for his driver's license but that Brumbalow shook his head and asked McLean why he was there. McLean told Brumbalow that someone had called the police about a disturbance. Brumbalow again

shook his head and said no. McLean asked Brumbalow again for his driver's license. McLean stated that Brumbalow either said no or that he did not have one. McLean then asked Brumbalow to go outside. Brumbalow responded that he was not going outside. At that point, McLean told Brumbalow to turn around and put his hands behind his back and that he was under arrest. McLean said that Brumbalow then "made a quick movement with his hands behind him. He pulled out a knife and took a step forward, which was in the -- in the direction of where I was standing." It startled McLean, and McLean testified that he felt threatened. McLean estimated that Brumbalow was three to four feet from him when he pulled the knife, and Brumbalow did not say anything. The knife was admitted into evidence.

McLean testified that he made eye contact with Brumbalow and immediately grabbed his arm and stretched it out. McLean then pushed Brumbalow into the wall, trying to get the knife away from the both of them. Brumbalow pushed off the wall, and both McLean and Brumbalow went to the floor in the dining room. Brumbalow was on his stomach; McLean was on top of Brumbalow's back and still had Brumbalow's arm stretched out. McLean commanded Brumbalow to stop resisting, but they continued to struggle for several minutes. McLean told the other two men to call 9-1-1, and Brewer did. McLean then told Jeff to help him get the knife away from Brumbalow. Jeff attempted to break Brumbalow's fingers away from the knife. Brumbalow was somehow able to get his hand and arm away from McLean and Jeff and bring the knife in toward his chest area; however, McLean and Jeff were able to force Brumbalow's arm back out. McLean then began to notice a large pool of blood

forming from a wound to Brumbalow's hand.

McLean testified that he and Jeff were eventually able to get the knife away from Brumbalow. Jeff threw it away from them, and McLean believed it ended up on the floor in the corner of the kitchen. McLean remembered Brumbalow say at some point that he wanted to kill himself. Roy Brumbalow (Roy), Brumbalow's older brother, then came into the residence. Roy told Brumbalow to "quit fighting or he was going to knock him in the head." At that point, Brumbalow did relax his body and said he was going to stop fighting. McLean then allowed Brumbalow to get up. McLean walked Brumbalow over to the kitchen sink and allowed Brumbalow to wash his wound out. McLean was not injured, but he had blood on his face, neck, and all over his clothes.

Brewer testified that Brumbalow is his first cousin. Brewer recalled that the incident between McLean and Brumbalow on April 11 happened so quickly that he did not see what happened very well. He did not see the knife until after Brumbalow was on the ground. Brewer stated that when Brumbalow was on the ground, he was trying to get away from McLean and trying to stab himself in the chest. It did not appear to Brewer that Brumbalow was trying to stab McLean. At some point, McLean told Brewer to call 9-1-1, and he did.

Jeff testified that Brumbalow is his uncle. Jeff remembered that on April 11, the officer twice asked Brumbalow nicely to step outside. Brumbalow was not saying anything; he was just standing there. At some point, the officer told Brumbalow to put his hands behind his back. Brumbalow just stood there, so the officer grabbed Brumbalow's arm and went to put it behind his back. Brumbalow resisted, and the

officer slammed Brumbalow up against the wall and then slammed him on the ground. The officer then started hollering that he needed help and that Brumbalow had a knife in his hand. Brumbalow was hollering that he was going to kill himself. Jeff got the knife out of Brumbalow's hand and put it on the kitchen counter beside the sink. Jeff did not know that Brumbalow had a knife in his hand until Brumbalow was already on the ground.

Roy testified that when he got to the residence, McLean and Brewer were holding Brumbalow down on the ground. Roy told them to let Brumbalow go because he was not going to hurt anybody. McLean and Brewer did so, and Brumbalow got up and went over to the kitchen sink to wash the blood off his hand. Roy stated that he saw the knife on the cabinet. While Brumbalow was rinsing his hand, McLean was five to six feet away from him and Brumbalow was about two feet away from the knife, so he could have reached over and picked it up again, but he did not.

The State initially argues that the knife brandished by Brumbalow during McLean's attempt to arrest him was *designed* for the purpose of inflicting serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A). The State notes that the blade of the knife was approximately four to five inches long. The State then details in its brief how the knife is commonly used by hunters to skin large game animals. But this evidence about the purpose of the knife is not in the appellate record, and we are precluded from considering materials outside the appellate record. The evidence in the record is insufficient to establish that the knife was *designed* for the purpose of inflicting serious bodily injury.

We must then determine whether the evidence is sufficient to establish that the knife, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B); *Revell v. State*, 885 S.W.2d 206, 209 (Tex. App.—Dallas 1994, pet. ref'd) ("If the evidence does not show that the knife caused death or serious bodily injury, then the State must produce evidence that shows the knife: (1) was capable of causing serious bodily injury; and (2) was displayed or used in a manner which establishes the intent to cause death or serious bodily injury."). Brumbalow does not argue that the knife itself was incapable of causing serious bodily injury. The knife was admitted into evidence. And McLean testified that from the struggle, Brumbalow's hand was injured by the knife in such a way that a large pool of blood formed from the wound and caused McLean himself to end up with blood on his face, neck, and all over his clothes. By finding Brumbalow guilty of aggravated assault against a public servant, the jury obviously reasonably inferred from this evidence that the knife was capable of causing serious bodily injury. As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).

Brumbalow does argue, however, that he did not display or use the knife in a manner that establishes that he intended to cause death or serious bodily injury. Brumbalow reasons that in the few seconds before McLean attempted to try to take the knife away from him, he did not point the knife at McLean, and he said nothing to McLean. Brumbalow claims that there simply was no indication of what his intentions

were at that time. We disagree.

McLean's testimony established that Brumbalow pulled out the knife in response to McLean's statement to Brumbalow to turn around and put his hands behind his back because he was under arrest. McLean further stated that Brumbalow took a step in his direction and that they made eye contact. These gestures carried an implied, if not an express, threat that if Brumbalow did not get what he wanted, then he would use the knife to seriously injure or kill McLean. *See Jones v. State*, 843 S.W.2d 92, 96-97 (Tex. App.—Dallas 1992, pet. ref'd) ("[I]t is sufficient if the weapon is capable of causing death or serious bodily injury or is displayed in a manner conveying an express or implied threat that serious bodily injury or death will result if the aggressor is not satisfied."). McLean also stated that he was only three to four feet from Brumbalow, so Brumbalow was close enough in proximity to use the knife on McLean. Moreover, McLean said that he felt threatened by the knife. *See Billey v. State*, 895 S.W.2d 417, 422 (Tex. App.—Amarillo 1995, pet. ref'd) ("Where the victim testifies that he or she was in fear of serious bodily injury or death, a verbal threat by the accused is not required for the fact finder to conclude that threats were actually made.").

Viewing all the evidence in the light most favorable to the verdict, we thus conclude that a rational trier of fact could have found Brumbalow committed the offense of aggravated assault against a public servant beyond a reasonable doubt. We overrule Brumbalow's second issue.

Having overruled both of Brumbalow's issues, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed January 9, 2014
Publish
[CRPM]