

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00480-CR

William Charles **WEBB**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 54th Judicial District Court, McLennan County, Texas
Trial Court No. 2012-675-C2
Honorable Matt Johnson, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
    Marialyn Barnard, Justice
    Luz Elena D. Chapa, Justice

Delivered and Filed:  August 27, 2014

AFFIRMED

A jury convicted appellant William Charles Webb of arson.  The trial court sentenced Webb to sixty-five years' confinement in the Texas Department of Criminal Justice – Institutional Division in accordance with the punishment recommended by the jury.  On appeal, Webb raises five issues, contending: (1) the evidence is legally insufficient to support his conviction; (2) the trial court erred by refusing to submit a lesser-included offense to the jury; (3) the trial court erred by allowing the admission of extraneous offense evidence regarding Webb, and (4) the trial court

erred by denying a mistrial after testimony was elicited regarding Webb's Fifth Amendment right to remain silent. We affirm the trial court's judgment.

## BACKGROUND

William Charles Webb and Tiffany Tucker had been in a romantic relationship that resulted in the birth of a child. Weeks prior to the arson incident giving rise to this case, Webb was arrested and held in custody for endangering that child. On March 10, 2012, Webb bonded out of jail – the same day as the arson.

On the evening of March 10, 2012, Tucker and members of her extended family were watching a movie at the home of her sister, Sonya Grays. During the movie, Grays and other family members began to smell a strong odor of gasoline. After searching for a gas leak in the kitchen, Grays opened the back door and the smell of gasoline was stronger. Grays testified she looked outside the door and saw Webb crouching down beside her mother's car. According to Grays: she made eye contact with Webb, he had a cigarette in one hand, and then he fled the scene on foot. After watching Webb flee, Grays and her family contacted the police.

Officer Edward Williams of the Waco Police Department responded to the call. He initially investigated the scene and discovered all of the tires on both vehicles in Grays's driveway had been slashed, and the area next to the home and rooms inside the home smelled strongly of gasoline. Officer Williams was given the name "William Webb" as a potential suspect and Tucker informed him of her relationship with Webb. Shortly after Officer Williams received this information, Webb began calling Tucker's cell phone. Tucker initially did not answer. However, Officer Williams eventually instructed Tucker to answer one of Webb's calls on speaker phone. Officer Williams testified Webb was "continually trying to get [Tucker] to come and meet up with him . . . he was begging for her to come back with him . . . and then in the next breathe [sic] he's talking about how he wants to . . . put bodily harm on her and her family." After multiple attempts

at locating Webb, officers eventually discovered he might have been hiding at his mother's house, which was roughly four blocks from the crime scene.

A Waco Police Department SWAT team secured a perimeter around the home and asked Webb's mother for permission to search the house. Webb's mother told officers Webb was not inside the home and consented to the search. Despite his mother's denials, Webb was found hiding under her kitchen sink and was taken into custody.

Meanwhile, Captain Gary Lee of the Waco Fire Marshall's Office was conducting an arson investigation at Grays's home. Captain Lee testified he "went around to the side of the house and . . . saw some damage from the fire and . . . smelled the smell of gasoline." Captain Lee found a red gas can on the opposite side of the fence from the home. Lee also discovered a burned package of cigarettes on a window sill above what appeared to be a thick liquid on the ground underneath the sill that smelled strongly of gasoline. Captain Lee took pictures of the scene and samples of the liquid. The evidence was submitted to arson investigator Lieutenant Kevin Fisk of the Waco Fire Marshall's Office. Lieutenant Fisk testified the liquid tested positive for gasoline and that:

> [a]lso on the window sill, in relation to the damage around the top of that . . . [i]n relation to where the damage is with the charring, I see a discoloration on what I believe to be an aluminum window sill showing that, you know, there was heat exposure there that allowed that discoloration to take place.

Lieutenant Fisk explained that, based on a number of variables, Webb could have started a fire on the window sill without igniting the gasoline on the ground beneath it.

After hearing the testimony of Grays, Tucker, Officer Williams, Captain Lee, and Lieutenant Fisk, as well as others, the jury convicted Webb of arson and recommended he be sentenced to sixty-five years' confinement. The trial court rendered judgment accordingly, and Webb subsequently perfected this appeal.

## ANALYSIS

On appeal, Webb raises five issues, contending: (1) the evidence is legally insufficient regarding the "fire" element required to support his conviction for arson; (2) the trial court erred by refusing to submit the lesser-included offense of "attempted arson" to the jury; (3) the trial court erred by allowing the admission of extraneous offense evidence regarding Webb's prior criminal history during the guilt/innocence phase of trial; (4) the trial court erred by allowing the admission of extraneous offense evidence regarding an "Order of Emergency Protection" against Webb; and (5) the trial court erred by denying a mistrial after testimony was elicited regarding Webb's post-arrest, post-*Miranda* silence.

### *Legal Sufficiency*

Webb first contends the evidence is legally insufficient to support his conviction for the offense of arson. To determine whether the evidence is legally sufficient, we apply the *Jackson* standard of review, viewing all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *see Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The factfinder is the exclusive judge of the weight and credibility of the evidence, and, in the event the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Wise*, 364 S.W.3d at 903. We apply the same standard to both direct and circumstantial evidence. *Id.*

Additionally, the State is not required to disprove all reasonable alternative hypothesis that are inconsistent with a finding of guilt. *Id.* Rather, we consider only whether the inferences needed to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Id.*

Webb was convicted for the offense of arson. "A person commits [arson] if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with the intent to destroy or damage" certain property specified by statute. TEX. PENAL CODE ANN. § 28.02 (West 2011). On appeal, Webb argues there is legally insufficient evidence of a "fire" as required to convict him for the offense of arson. We disagree.

It is undisputed that a burned cigarette package was found on the window sill above gasoline on the ground at Grays's home. Such evidence alone is circumstantial evidence supporting an inference of "fire" at the arson location, and it is widely understood that "circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In addition to the burned cigarette package, the State also produced testimony from Lieutenant Fisk that discoloration on the window sill around the burned cigarette package resulted from "heat exposure there that allowed that discoloration to take place." Therefore, Lieutenant Fisk's testimony supports the inference that the cigarette package was on fire at some point after it was placed on the window sill. As noted above, for a conviction for the offense of arson, it is not necessary that the fire continue after ignition. *See* TEX. PENAL CODE ANN. § 28.02.

We hold the cumulative force of the evidence regarding the burned cigarette package and Fisk's testimony, when viewed in the light most favorable to the prosecution, supports a rational trier of fact finding that there was a "fire" beyond a reasonable doubt as required for a charge of arson. *See Wise*, 364 S.W.3d at 903. Accordingly, we overrule this issue and hold there was legally sufficient evidence of the element of "fire" to support the jury's verdict.

### *Lesser-Included Offense*

Webb next contends he was entitled to a lesser-included offense instruction for "attempted arson" as an alternative to the charged offense of arson. We apply a two-step analysis to determine whether an instruction on a lesser-included offense should be given to the jury. *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013); *Cavasos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Brumbalow v. State*, 432 S.W.3d 348, 350 (Tex. App.—Waco 2014, no pet.). First, we must determine if the proof necessary to establish the charged offense also includes the lesser offense. *Cavasos*, 382 S.W.3d at 382. An offense is a lesser-included offense where "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006); *Meru*, 414 S.W.3d at 162. If we determine that the requested lesser offense is a lesser-included offense, we must then consider whether a rational jury could find that, if the defendant is guilty, he is guilty only of the lesser offense. *Meru*, 414 S.W.3d at 162–63.

It is uncontested by the parties that attempted arson is a lesser-included offense of arson. We agree that an offense is a lesser-included offense if it consists of an attempt to commit the offense charged; such is the case with attempted arson. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(4). However, the parties disagree as to whether a rational jury could have found Webb guilty of only attempted arson. *See Meru*, 414 S.W.3d at 162–63. Resolving this issue is a fact determination based on the evidence presented at trial. *See id*. at 163. "If there is evidence that raises a fact issue of whether the defendant is guilty only of the lesser offense, an instruction on the lesser-included offense is warranted, regardless of whether the evidence is weak, impeached, or contradicted." *Id.* Anything more than a scintilla of evidence is sufficient. *Wortham v. State*, 412 S.W.3d 552, 558 (Tex. Crim. App. 2013). "However, such evidence cannot be mere

speculation – it must consist of *affirmative* evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.* (emphasis added).

Here, Webb has not presented affirmative evidence rising above mere speculation that he only attempted arson. Rather, Webb contends he merely attempted arson because, essentially, "had there been an open flame around that much gasoline, the house would have surely erupted in flames which would have been witnessed by somebody somehow." As we held above, there is legally sufficient evidence of a fire at the arson site as evinced by the fire damage to the window sill of Grays's home and the charred cigarette package. We hold that Webb's speculative argument to the contrary is not affirmative evidence entitling Webb to an instruction on the lesser-included offense of attempted arson. Moreover, the statute defining arson contemplates the completion of the offense even in the absence of continuation after the initial ignition. *See* TEX. PENAL CODE ANN. § 28.02. Thus, Webb's failure to actually burn the house down, or even cause damage, does not turn the offense into an attempt.

Accordingly, we overrule this issue and hold Webb was not entitled to an instruction on the lesser-included offense of attempted arson because there is no "*affirmative* evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.* (emphasis added).

### *Extraneous Offense Evidence*

Webb next contends the trial court erred by admitting extraneous offense evidence during the guilt/innocence phase of the trial. Specifically, Webb argues: (1) the trial court erred by allowing the admission of extraneous offense evidence regarding Webb's prior criminal history; and (2) the trial court erred by allowing the admission of extraneous offense evidence regarding an "Order of Emergency Protection" against Webb.

*Prior Criminal History*

At trial, part of Webb's defense strategy was arguing he lacked the requisite intent for arson because he only meant to threaten Tucker to "send a message" instead of actually carrying through with the charged offense. Although Webb did not present an opening argument, he introduced this defensive theory to the jury through his cross-examination of the State's witnesses. For instance, Webb asked one of the State's arson investigators, Lieutenant Fisk, if given the facts of the case:

> [T]here [is] a different explanation as to the intent? And I gave you an example of what that might be. In other words, I'm not intending to burn your house down, I'm intending to send you a message. I'm leaving a clear calling card. The Newport cigarettes that you know I smoke, gasoline, I could have burned this down but I didn't. That could have happened too, couldn't it? . . . So we don't know the intent, do we?

Later in trial, Webb tried to expand upon this intent-based defensive theory by asking Tucker how she perceived Webb's state of mind on the day of the arson. Specifically, counsel for Webb had the following exchange with Tucker during cross-examination:

> Q: Are you familiar with the term "idle threat," Ms. Tucker? Have you ever heard that term before? In other words, when you say, you know, you better do that or I'm gonna hit you, you heard people say stuff like that, right? They don't mean it but they say it?
>
> A: Uh-huh.
>
> Q: And you'd only known [Webb] for – for about a year?
>
> A: Uh-huh.
>
> Q: Okay. Did you know him well enough to know whether or not he was just trying to get your attention when he said these things that you say he said?
>
> A: At this point, sir, I don't know where [Webb's] mind was at. I don't know what he was capable of.
>
> Q: So you don't know what he meant by that?
>
> A: I don't know what he meant by that.

The State interpreted this line of questioning as Webb trying to bolster his defensive theory that he did not actually intend to commit arson, but rather send a threatening message to Tucker. In response, the State questioned Tucker about Webb's criminal history in the following exchange during re-direct:

> Q: Ms. Tucker, um, you said – the defense asked you, "Did you think this was an idle threat?" Something that [Webb], the defendant, said and didn't mean. Okay. Considering what you know of him . . . Were you aware that [Webb] had been in prison for assaulting a police officer?
>
> A: Yes
>
> Q: Did you discuss that with [Webb], that he had been to prison before?
>
> A: Yes.
>
> . . .
>
> Q: And determining whether this was an idle threat, um, did you know he had had a previous relationship and had convictions resulting from that, too?
>
> A: Yes.
>
> . . .
>
> Q: You're aware [Webb] had injured a child previous to being in a relationship with you? . . . Were you aware that there was another felony conviction?
>
> A: No.
>
> Q: [Webb] hadn't told you that?
>
> A: No.

Webb objected to each of the State's questions based on Texas Rules of Evidence 403 and 404(b).[1] The trial court overruled each of his objections.

---

[1] Although Webb objected to the admission of the prior criminal history evidence based on Rule 403 and cites to it in his brief, on appeal, he only argues improper admission of the evidence based on Rule 404(b). Accordingly, as he does not present argument relevant to Rule 403, which precludes the admission of evidence when its probative value is outweighed by its prejudicial effect, we will not discuss it. *See* TEX. R. EVID. 403.

Under the Texas Rules of Evidence, "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

For instance, one unlisted and well-established rationale for admitting extraneous offense evidence is to rebut a defensive issue that negates an element of the charged offense. *See id.*; *Marin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991). The Court of Criminal Appeals has recognized that the defense "may open the door to the admission of extraneous-offense evidence" by the State for the purpose of rebutting defensive theories. *De La Paz*, 279 S.W.3d at 345; *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). Here, the State contends Webb opened the door to the use of the challenged extraneous-offense evidence through his cross-examination of the State's witness. The record reflects the trial court overruled Webb's objections based on the State's rebuttal theory.

We review a trial court's ruling on the admissibility of extraneous offense evidence under an abuse of discretion standard. *De La Paz*, 279 S.W.3d at 343. This is because whether extraneous offense evidence has any relevance apart from character conformity, as required by Rule 404(b), and the balance between probative value and the counter considerations set out in Rule 403, are questions for the trial court. *Id.* As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion and we will uphold the trial court's ruling. *Id.* at 343–44. Further, if the trial court's ruling is correct on any applicable evidentiary theory, we will not disturb the ruling even if the trial judge gave the wrong reason for the ruling. *Id.* at 344.

We agree that the introduction of a defendant's criminal history is generally prejudicial. However, having reviewed the record, it is at least subject to reasonable disagreement whether the extraneous-offense evidence regarding Webb's criminal past was admissible for the purpose of rebutting Webb's defensive theory that he did not have the requisite intent for the offense of arson, but rather was "idly-threatening" Tucker to "send her a message." *See Bass*, 270 S.W.3d at 563. Therefore, we overrule this issue and hold the trial court did not abuse its discretion by deciding that the extraneous-offense evidence was admissible to rebut Webb's defensive theory regarding "idle threats" and "sending a message" to Tucker and her family.

*Order of Emergency Protection*

At trial, the State introduced as exhibit 35 an "Order of Emergency Protection," which precluded Webb from (1) communicating with Tucker or members of her family, and (2) coming within 500 feet of her residence. The order was granted because Webb had "been arrested for an offense involving family violence." Webb objected to the relevance of this evidence and its admissibility as extraneous offense evidence. The trial court overruled his objections.

As stated above, we review the trial court's ruling on the admission of extraneous offense evidence for an abuse of discretion. *De La Paz*, 279 S.W.3d at 343. As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion and we will uphold the trial court's ruling. *Id.* at 343–44. If the trial court's ruling is correct on any applicable theory of law, we will not disturb the ruling even if the trial judge gave the wrong reason for the ruling. *Id.* at 344.

Here, the State argues the Order of Emergency Protection was admissible to show Webb's motive to cause harm to Tucker. The order specifies Webb had been arrested for family violence. The State argues the order is evidence of Webb's motive for the arson — retaliation against Tucker and her family for causing him to be arrested for the offense of family violence.

- 11 -

It is well-established that extraneous offense evidence is admissible to prove motive. *See* TEX. R. EVID. 404(b). Because it is within the zone of reasonable disagreement whether the order is evidence of Webb's motive for the arson, we cannot say the trial court abused its discretion by admitting the order into evidence. *See De La Paz*, 279 S.W.3d at 343–44. Accordingly, we overrule this issue and hold the trial court did not abuse its discretion by admitting the Order of Emergency Protection.

### *Post-Arrest Silence*

Webb next contends the trial court erred by not granting a mistrial after a witness for the State commented on Webb's post-arrest silence in response to a question by the prosecutor. Specifically, an officer was asked if he was "able to get any information from" Webb after he was *Mirandized*, and the officer responded "No." Webb objected. The trial court sustained Webb's objection and instructed the jury to disregard the exchange. On appeal, Webb contends this comment was a clear and deliberate violation of his Fifth Amendment right to remain silent and warranted a mistrial. Because the trial court sustained Webb's objection and instructed the jury to disregard, the only occasion for mistake was the trial court denying the motion for mistrial. *See Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).

"Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (quoting *Hawkins*, 135 S.W.3d at 77). We review the trial court's ruling on a motion for mistrial for an abuse of discretion, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* at 699. However, "whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis." *Id.* (quoting *Hawkins*, 135 S.W.3d at 77). Accordingly, we apply the test articulated in *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998) and balance the following three factors to determine whether a mistrial is appropriate:

&bull; the severity of the misconduct;

&bull; the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and

&bull; the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).

*See Archie*, 221 S.W.3d at 700.

Having reviewed the record in light of the *Mosley* factors, we hold the trial court did not abuse its discretion by denying Webb's motion for mistrial. *See id.* Even if we assume the State's indirect question actually commented on or asked about Webb's decision to exercise his right to remain silent and therefore constituted error, Webb has failed to establish harm under the remaining *Mosley* factors.

The second *Mosley* factor, as stated above, concerns a measure adopted to cure the misconduct at trial. *See id.* Here, the trial court instructed the jury to disregard the State's question about obtaining post-*Miranda* information from Webb. Generally, the harm from asking an improper question, in most cases, can be cured by an instruction to disregard. *See Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005); *see also Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ("Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer.").

The third *Mosley* factor concerns the certainty of convicting the defendant absent the challenged misconduct. *See Archie*, 221 S.W.3d at 700. As we held above, the evidence is legally sufficient to convict Webb for the offense of arson. Moreover, the combined eyewitness, physical, and circumstantial evidence presented by the State strongly supports Webb's guilt and conviction for arson.

Given our review of the *Mosley* factors as applied to this case, we hold the trial court's denial of Webb's request for a mistrial was not outside the zone of reasonable disagreement. *See Archie*, 221 S.W.3d at 699. Accordingly, we overrule this issue.

## CONCLUSION

Based on the foregoing, we overrule Webb's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish