**Opinion filed December 29, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00090-CR

_____

## THOMAS MICHAEL ROEMISCH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 132nd District Court**

**Scurry County, Texas**

**Trial Court Cause No. 10165**

## M E M O R A N D U M   O P I N I O N

The jury convicted Thomas Michael Roemisch of assault on a public servant, and it assessed punishment at confinement for thirty years. Appellant brings two issues. In his first issue, Appellant maintains that the trial court erred when it denied Appellant's motion to suppress a video recording of a jail hallway. In Appellant's second issue, he maintains that the trial court erred when it refused to give instructions on the lesser included offenses of resisting transportation and interference with public duties. We affirm.

Appellant was an inmate at the Scurry County Jail. On the date of the alleged offense, he was being kept in a "segregation cell." Appellant had finished cleaning his cell, and jailers Ky Gressett and Tommy Paske went to retrieve the cleaning supplies from him. When they did so, Appellant walked out of his cell and refused to go back in.

Gressett and Paske explained to Appellant that he needed to return to his cell. Although Appellant's demeanor was "calm," he repeatedly told Gressett and Paske that "he wasn't going back into that cell." Appellant grew "more belligerent," and Paske called for the day-shift sergeant, Joe Lay, to assist him and Gressett.

When Lay entered the "segregation hall," he saw Gressett and Paske talking to Appellant. Appellant seemed "very aggravated and pretty mad." Lay tried to talk to Appellant to "find out what the problem was." Appellant began to act "very, very aggressive" toward Lay.

When Appellant kicked his shoes off, pulled his shirt off, and threw the shirt, Lay realized that he and the jailers would need to go "hands on" to move Appellant back into his cell. Lay and Paske admitted that the jailers initiated physical contact with Appellant.

Paske and Gressett grabbed Appellant's arms. Lay attempted to grab Appellant's lower extremities. Somehow, Appellant "got one of his arms loose" and wrapped his arm and hand around Lay's neck in a "headlock." Appellant dragged Lay "probably 14 to 15 feet down the hallway by [his] head while twisting and choking [him]."

Lay grabbed Appellant's thumb and bent it back in an attempt to make Appellant release him. "Obviously, that didn't work, since [they] went all the way down the hallway." They fell to the ground; Appellant continued to hold Lay around his head and neck. Lay was worried that Appellant was "going to break [his] neck."

When Paske realized that Appellant had Lay in a headlock, he applied pressure to points to make Appellant release; none of these worked. Lay was "turning real red, and he looked bad." Paske told Appellant to "let go" and "stop resisting," but "nothing was getting through." Paske "form[ed] a knife with [his] hand and shove[d] it under [Appellant's] nose" in a "very rapid motion." Appellant finally released Lay

Gressett and Paske called for additional backup as they continued to struggle with Appellant. Jail Administrator Delwyn Davis, Chief Deputy Brian Martinez, and Deputy Juan Rodriguez came to assist. Together, they were able to handcuff Appellant and escort him back to his cell. Only after they secured Appellant did they notice Lay leaning against a wall in the hallway.

Chief Deputy Martinez assisted Lay to a seat in a nearby multipurpose area. Lay was in "extreme pain in [his] shoulders, neck, and head area." He was "having a hard time catching his breath . . . . [H]is color was real red, his face and all." "[I]t was obvious that he was in distress." Lay was escorted out of the jail in a wheelchair and sent to the emergency room.

At the hospital, Lay received an MRI and was diagnosed with an acute cervical strain. He was prescribed pain medication and attended six physical therapy appointments. At trial, Lay testified that he still experiences muscle strain, "tight neck," and muscle spasm.

The entire incident was recorded on the jail's video recording system. Prior to trial, Appellant filed a motion to suppress the recording, arguing that it constituted a violation of Appellant's Fourth, Fifth, Sixth, and Fourteenth Amendment rights.

During the pretrial hearing, the State entered the recording as an exhibit and played it for the trial court. Chief Deputy Martinez described the contents of the recording, as well. He explained that the recording showed two hallways: one that

3

led "out to the main hallway," with "doors on [the] right and the last one on [the] left" opening into separation cells, and a second hallway that led "from the pod central . . . down toward the first entrance on the right," which opened into a separation cell. Although they were not "main hallways" in the jail, both hallways were "accessible to all of the employees and inmates who are escorted in that area."

After reviewing the video, the trial court denied Appellant's motion. The trial court opined, "There is no expectation of privacy in a prison or county jail as contemplated by this video, this motion, this trial. So motion is denied." The trial court made no findings of fact.

In his first issue, Appellant argues that entry of this video recording was harmful error justifying reversal of the judgment against him. Specifically, Appellant contends that the recording was made in violation of his Fourth Amendment right to privacy. The State responds that Appellant lacked standing to complain of the admission of the recording because he had no legitimate expectation of privacy in the jail hallway.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When we review the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). When application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). Therefore, in this case we review de novo whether the trial court erred when it

admitted the video recording. *See State v. Scheineman*, 77 S.W.3d 810, 812 (Tex. Crim. App. 2002).

Electronic surveillance constitutes a search and seizure if it violates a justifiably relied-upon expectation of privacy. *See Smith v. Maryland*, 442 U.S. 735, 740–41 (1979) (citing *Katz v. United States*, 389 U.S. 347 (1967)). Therefore, a person has standing to argue that a search was unreasonable only if (1) he has a subjective expectation of privacy in the place searched and (2) society is prepared to recognize that expectation as "reasonable" or "legitimate." *Id.*; *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014) (citing *Minnesota v. Olson*, 495 U.S. 91, 95–97 (1990); *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004)). Additionally, an inmate must overcome the already lowered expectation of privacy that exists in a jail setting. *See Scheineman*, 77 S.W.3d at 813 ("Loss of privacy is an inherent incident of confinement." (citing *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984))).

In *Hudson*, the Supreme Court explained that "[d]etermining whether an expectation of privacy is 'legitimate' or 'reasonable' necessarily entails a balancing of interests." 468 U.S. at 527. In jail, an inmate's interest in privacy must be balanced against "the interest of society in the security of its penal institutions." *Id.*

Consequently, Texas courts have refused to hold that a reasonable expectation of privacy exists between codefendants speaking alone in a holding cell or between codefendants speaking across cells. *See, e.g.*, *Scheineman*, 77 S.W.3d at 813; *Ex parte Graves*, 853 S.W.2d 701, 706 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). A hallway between inmates' separation cells is indistinguishable from these areas.

To echo the Supreme Court, "it would be literally impossible to accomplish . . . prison objectives," such as internal security, if inmates retained a right of privacy

5

in passageways throughout the jail. *Hudson*, 468 U.S. at 527. Therefore, any subjective expectation of privacy harbored by Appellant is not one that society is prepared to recognize as reasonable. Appellant has no standing to challenge the video recording. Appellant's first issue is overruled.

In his second issue, Appellant argues that the trial court erred when it denied his request to submit to the jury the lesser included offenses of (1) resisting transportation and (2) interference with public duty. We hold that Appellant was not entitled to an instruction for either lesser offense.

Courts apply a two-pronged test to determine whether a lesser included offense must be included in the jury charge when requested. *See, e.g.*, *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993). A charge on a lesser included offense is required if (1) the lesser included offense is included within the proof necessary to establish the charged offense and (2) there is some evidence that would permit a rational jury to find that, if the accused is guilty, he is guilty of only the lesser offense. *Hall*, 225 S.W.3d at 526, 535; *Rousseau*, 855 S.W.2d at 672–73; *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981); *see* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).

The first prong presents "a question of law that does not depend on the evidence presented at trial." *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013). An offense is a lesser included offense of another offense under Article 37.09 if the indictment either (1) alleges all of the elements of the lesser included offense or (2) alleges elements plus facts from which all of the elements of the lesser included offense may be deduced. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009). We resolve this prong by reviewing all of the elements and facts alleged in the charging

6

document and comparing them to the elements of the lesser included offense. *Hall*, 225 S.W.3d at 535.

In connection with the second prong of the inquiry, some evidence must exist in the record that would permit a jury to rationally find that, if the accused is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). There must be some evidence from which a rational jury could acquit an accused of the greater offense while convicting him of the lesser included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

The State argues that the trial court did not err because neither resisting transportation nor interference with public duty is a lesser included offense of assault on a public servant.

In the indictment, the State alleged as follows:

[Appellant] . . . did then and there intentionally, knowingly, or recklessly cause bodily injury to Joe Lay by grabbing and twisting his neck, and [Appellant] did then and there know that the said Joe Lay was then and there a public servant, to-wit: a jailer at the Scurry County Jail, and that the said Joe Lay was then and there lawfully discharging an official duty, to-wit: attempting to put [Appellant] in this cell.

The elements of assault on a public servant are:

(1) A person
(2) Intentionally, knowingly, or recklessly
(3) Caused bodily injury to another and
(4) Knew that the person he assaulted was a public servant
(5) While the public servant was lawfully discharging an official duty.

*See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West Supp. 2017). The elements of resisting transportation are:

(1) A person
(2) Intentionally
(3) Prevented or obstructed
(4) A person whom he knew to be a peace officer or a person acting in a peace officer's presence and at his direction
(5) From effecting transportation of the actor or another
(6) By using force against the peace officer or another.

*Id.* § 38.03(a). Finally, as relevant to this case, the elements of interference with public duties are:

(1) A person
(2) With criminal negligence
(3) Interrupted, disrupted, impeded, or otherwise interfered with
(4) A peace officer
(5) While the peace officer was performing a duty or exercising authority imposed or granted by law.

*Id.* § 38.15(a)(1) (West 2016). The terms of the indictment, which allege that Appellant "caused bodily injury to" Lay as he attempted to put Appellant in his cell, could encompass the lesser included offense of resisting arrest or transportation, which would require that the State prove he "used force" against Lay while "transporting" Appellant.[1] *See Gumpert v. State*, 48 S.W.3d 450, 453 (Tex. App.—Texarkana 2001, pet. ref'd); *Cf. Brumbalow v. State*, 432 S.W.3d 348, 351 (Tex. App.—Waco 2014, no pet.) (holding no error in refusing lesser-included-offense instruction for resisting arrest when indictment charging assault on a public servant alleged that the defendant only "threatened" a peace officer during an arrest). The fact that Appellant "impeded" Lay's attempt to perform "a duty or exercise[]"

---

[1] Appellant's arguments rest on the contention that a jailer falls within the statutory definition of a "peace officer." For purposes of analysis, we assume, without so deciding, that a jailer may be a peace officer.

authority imposed or granted by law," namely transporting Appellant to his cell, is also within the proof required by the terms of the indictment. Because the indictment "alleges elements plus facts . . . from which all of the elements of the lesser-included offense[s] may be deduced," the first prong is satisfied for each offense. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g).

We must now consider whether evidence existed to allow the jury to find that, if Appellant was guilty, he was guilty only of resisting transportation or interference with public duties, and not assault. *See Guzman v. State*, 188 S.W.3d 185, 192 (Tex. Crim. App. 2006). The test is not whether the evidence of Appellant's conduct was "subject to different interpretations." *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001). Rather, the evidence must establish that the lesser included offense is a "valid, rational alternative to the charged offense." *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011) (quoting *Hall*, 225 S.W.3d at 536). The evidence must be such that not only could the jury determine that Appellant either (1) obstructed, by using force, Lay's attempt to move him into the cell, or (2) interfered with Lay's exercise of authority, but also that, in the course of committing either, he did not assault Lay. *See Bullock v. State*, 509 S.W.3d 921, 925 (Tex. Crim. App. 2016).

However, Lay testified that he was injured by Appellant's use of force. Appellant wrapped Lay in a headlock; as a result, Lay suffered an acute neck strain, which required six physical therapy treatments and multiple doctor's appointments. This testimony was corroborated by Lay's medical records, as well as witness testimony that Lay was "red-faced," was "out of breath," and "did not look good."

There is evidence in the record that is "directly germane" to the fact that Appellant harmed Lay. *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). The only evidence that Appellant did not harm Lay is Appellant's own

9

testimony that the man in the surveillance video was not him. This alone does not constitute the requisite "scintilla of evidence" to entitle Appellant to the lesser-included-offense instruction: "If a defendant either presents evidence that he committed no offense or presents no evidence, *and there is no evidence otherwise showing he is guilty only of a lesser included offense*, then a charge on a lesser included offense is not required." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

Therefore, neither resisting transportation nor interference with public duties is a valid alternative to the offense of assault on a public servant. The trial court did not err by refusing to give the requested instructions. We overrule Appellant's second issue.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


December 29, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

10