1656-14

NO._____

ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

ADAM GALVAN,
                    Appellant

VS.

THE STATE OF TEXAS,
                    Appellee

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

In Appeal No.10-13-00407-CR
from the
Court of Appeals
for the Tenth Judicial District
Waco, Texas

FILED IN
COURT OF CRIMINAL APPEALS

FEB 20 2015

Abel Acosta, Clerk

Adam Galvan, Pro Se
TDCJ-ID#1895561
Telford Unit
3899 State Hwy 98
New Boston, Tx 75570

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 18 2015

Abel Acosta, Clerk

# TABLE OF CONTENTS

INDEX OF AUTHORITIES                                      III

STATEMENT REGARDING ORAL ARGUMENT                        1

STATEMENT OF THE CASE                                    2

STATEMENT OF PROCEDURAL HISTORY                          2

GROUND FOR REVIEW                                        3

      DID THE EVIDENCE SHOW THE REQUIRED CULPABLE
      MENTAL STATE?

ARGUMENT NUMBER ONE                                      3

PRAYER FOR RELIEF                                        7

CERTIFICATE OF SERVICE                                   7

APPENDIX[Opinion]

# INDEX OF AUTHORITIES

**CASES**

Arcenaux v. State,803 s.w.2d 267(Tx.Cr.App.1990)          7

Ortiz v. State,144 s.w.3d 225(Tx.App.2004)          6

Scott v. State,861 s.w.2d 440(Tx.App.1993)          6

**STATUTES**

TEX. PENAL CODE 22.02          5

TEX. PENAL CODE 22.05          6

T.R.A.P. RULE 66.3(a),(f)          3

NO._____

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS


ADAM GALVAN

VS.

THE STATE OF TEXAS

---

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

Appellant respectfully submits this Petition for Discretionary Review and moves this Honorable Court grant review of this cause and offers the following in support thereof:


### STATEMENT REGARDING ORAL ARGUMENT

The Appellant request oral argument in this case because such argument may assist the Court in applying the facts to the issues raised. It is suggested that oral argument may help simplify the facts and clarify the issues.

## STATEMENT OF THE CASE

Appellant was arrested and charged with aggravated assault on a public servant, all stemming from a traffic assault wherre appellant was acting nervous and refused orders to remove his hand from his pocket. Appellant was subsequently forcibly removed from the vehichle and his hand was forcibly removed from his pocket revealing a handgun. Appellant never made any verbal threats or tried to fire the handgun. The only words Appellant spoke were "don't shoot me.", seconds before being shot by officers. Appellant was tased numerous times during the events that led up to his shooting.

## STATEMENT OF PROCEDURAL HISTORY

In Cause No.F47144 the Appellant was charged with three counts of the offense of aggravated assault on a public servant. The Appellant was convicted of such offense on November 7, 2013 and appealed his conviction. On November 26, 2014 the Waco Court of Appeals affirmed the conviction. No motion for rehearing was filed. Appellant no brings this, his Petition for Discretionary Review.

2

## GROUND FOR REVIEW

### I.

DID THE EVIDENCE SHOW THE REQUIRED CULPABLE MENTAL STATE?


## ARGUMENT NUMBER ONE

### A.  Reasons for Review

Two(2) reasons for review are presented. First, the Waco Court of Appeals decision here is in direct conflict with the decisions of this Honorable Court and the lower appellate courts. T.R.A.P.66.3(a). Finally, the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals, power of supervision.T.R.A.P.66.3(f).

### B.  Argument

Appellant requests this court grant Petition to exercise its power to supervise this State's lower courts. Specifically, this court should grant his petition to examine the ruling of the Waco Court of Appeals and its holding that the evidence was sufficient to support conviction for aggravated assault on a public servant.

## 1. Factual background

The State's first witness was Officer Davenport who testified about the traffic stop of Appellant. He stated that Appellant appeared overly nervous and would not follow commands. He personally tased Appellant at least five times over the course of the arrest.(R.R.7 at 30,99). At no point did Davenport see a firearm nor did he hear any verbal threat from Appellant(R.R.7 at 93-94, 101).

Willie Coleman was called next and stated he was dispatched to the call. When he arrived, he noticed that the other officers were unable to overpower Appellant. he proceeded to tase Appellant fifteen times(R.R.7 at 147). At no point did Coleman ever see the weapon(R.R.7 at 162).

Detective Bagwell was the State's third witness. He arrived at the scene when he heard of a difficult traffic stop. he proceeded to draw his weapon on Appellant when he felt like he was not complying with instructions. Once he grabbed Appellant out of the car and threw him to the ground, he proceeded to get on top of him and try to get the gun out from under Appellant. (R.R.7 at 182-86). He testified that he was never threatened, Appellant's gun was never fired and Bagwell never told him he was under arrest(R.R.7 at 221-223)

Officer Lerner stated that he was called to the scene because there was a subject with a gun. He never observed

4

Appellant get shot; however he saw him repeatedly tased and he personally drive stunned him numerous times(R.R.7 at 250-51).

Chief Deputy Rogers testified that he was called to assist the traffic stop. he tased Appellant and ultimately shot him in the back(R.R.8 at 16-17). He he never was threatened by Appellant and he never saw a weapon in Appellant's hand(R.R. 8 at 27,30).

Charles Wallace testified that, although he didn't see anything, he heard Appellant scream "don't shoot me" then heard a gunshot.(R.R.8 at 95-96).

**2. Did the evidence show the required culpable mental state?**

Before a person may be found guilty of aggravated assault under section 22.02 of the Texas penal Code, he must first satisfy all the elements of at least one theory of simple assault. There are three theories or phases of assault:(1) intentionally, knowingly, or recklessly causing bodily injury;(2) intentionally, or knowingly threatening another with immenint bodily injury; and (3) intentionally or knowingly causing physical contact with another when the other person knows or should reasonably believe that the other will regard the contact as offensive or provocative. The second theory,(the one Appellant has been convicted of) intentionally or knowingly threatening another with imminent bodily injury is a conduct offense and has no

5

required result. The offense is satisfied if the accused **intentionally or knowingly** engaged in the prohibited conduct-threatening with imminent bodily injury.

The evidence shows that Appellant was forcfully removed from the vehichle and his hand holding the handgun was forcibly exhibited by officers. Appellant was then tased upwards of thirty times. There can be no question that during the thirty tasings Appellant had little or no control over his bodily functions. it is even quite possible that he was unable to release the gun if he wanted to. So even if the officers felt the weapon was pointed at them at various times during the altercation, Appellant did this **recklessly**, not intentionally or knowingly.

The evidence and the record shows in this case that, even though Appellant never intentionally or knowingly threatened officers with imminent bodily injury, he did recklessly engage in conduct that placed the officers in danger of serious bodily injury, as a result engaging in deadly conduct. sees **TEX. PENAL CODE** §22.05; **Scott v. State,**861 s.w.2d 440,448(Tx.App.1993)

Deaedly conduct is a lesser-included offense of aggravated assault if deadly conduct differs from aggravated assault only in the respect that a less culpable mental state is required. see **Ortiz v. State,**144 s.w.3d 225,231-32.

The evidence does not support intentionally or knowingly only recklessly in Appellant's action therefore aggravated

6

**APPENDIX**

assault as alleged in the indictment and jury charge was never shown. The verdict of guilty was therefore contrary to the law and the evidence. see **Arcenaux v. State,**803 s.w.2d 267,270-71 (Tx.Cr.App.1990).

## PRAYER FOR RELIEF

For the reasons stated above, it is respectfully submitted that the Court of Criminal Appeals of Texas should grant this Petition for Discretionary Review.

**Respectfully submitted,**

*Adam Galvan*

Adam Galvan, Pro Se
TDCJ-ID# 1895561
Telford unit
3899 State Hwy 98
New Boston, Texas 75570

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been mailed, U.S. mail, postage prepaid, to the Office of the Criminal District Attorney for Johnson County, Guinn Justice Center, 204 S. Buffalo Street, Cleburne, Texas 76033, and to the State prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, on this 12 day of ~~January~~ February, 2015.

*Adam Galvan*
APPELLANT



# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00407-CR

**ADAM GALVAN,**

**Appellant**

v.

**THE STATE OF TEXAS,**

**Appellee**

### From the 413th District Court
### Johnson County, Texas
### Trial Court No. F47144

## MEMORANDUM OPINION

Adam Galvan was charged and convicted of three counts of aggravated assault of a public servant. TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (West 2011). He was sentenced to 60 years in prison for each count. Because the evidence was sufficient to support his conviction for each count and the trial court did not err in denying Galvan's motion to quash, motion to suppress, and request for jury instructions on lesser included offenses, the trial court's judgment is affirmed.

## BACKGROUND

Brian Davenport, an officer with the Cleburne Police Department, was watching a house where drug activity was suspected and observed what he thought to be a drug transaction between a passenger of a vehicle and a resident of the house. He followed the vehicle; and when he observed a traffic violation, he initiated a traffic stop. Because of the way the vehicle stopped, Davenport thought the occupants of the vehicle might run; so he requested back up. Other officers arrived; and when the passenger of the vehicle, later identified as Galvan, would not take his right hand out of his jacket pocket, he was removed from the vehicle and taken to the ground. Galvan still refused to remove his hand from his jacket pocket. While officers struggled with Galvan on the ground, Galvan's hand was finally pulled from the jacket pocket, revealing a gun in Galvan's hand with his finger on the trigger. Officers continued to struggle with and tased Galvan to make him release the gun, all with no success. As a last resort, Galvan was shot by one of the officers. Galvan continued to struggle but finally let go of the weapon. Galvan continued to struggle with officers and EMS personnel and ultimately had to be sedated before he could be transported to a local hospital.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Galvan asserts the evidence is insufficient to support his convictions for aggravated assault of a public servant pursuant to Counts I, II, and III of the indictment. Specifically, he contends there was no testimony that he verbally

threatened the officers or that he pointed a gun at the officers or used or exhibited a firearm.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to

establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Galvan argues that because he did not verbally threaten anyone and Rogers did not personally see the gun in Galvan's hand, the evidence is insufficient to support his convictions. Galvan also argues that because he did not point the gun at anyone, he did not use or exhibit a firearm as alleged in the indictment.

The indictment alleged Galvan committed aggravated assault by threat with a firearm against Brian Davenport, an officer with the Cleburne Police Department; Sean Bagwell, a detective with the Cleburne Police Department; and Danny Rogers, the Deputy Chief of the Cleburne Police Department. A person commits an "aggravated assault "if the person commits assault as defined in" Texas Penal Code "§ 22.01 and the person . . . uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a) (West 2011). A firearm is a deadly weapon, per se. TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West 2011). Mere possession of a deadly weapon does not equate to "use or exhibit" under the Texas Penal Code. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Rather, the determining factor is that the deadly weapon was "used" *in facilitating* the underlying crime. *Id.*

Further, section 22.01 provides, "A person commits an "assault" if the person . . .

knowingly threatens another with imminent bodily injury . . . ." TEX. PENAL CODE ANN. § 22.01(a) (West 2011). A person can communicate a threat by conduct as well as by words. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984); *St. Clair v. State*, 26 S.W.3d 89, 97 (Tex. App.—Waco 2000, pet. ref'd). In determining whether a person is "threatened" for purposes of the assault statute, the crucial inquiry is whether the assailant *acted* in such a manner as would under the circumstances signify an immediate threat of danger to a person of reasonable sensibility. *Olivas v. State*, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006).

*Evidence*

When Galvan encountered the officers, he would not take his right hand out of his jacket pocket. When the passenger door was opened, Bagwell pulled Galvan out and took him to the ground with the help of Rogers. Galvan was pinned to the ground while Bagwell tried to pull Galvan's hand out of Galvan's pocket. At the same time, Rogers was struggling to hold Galvan's left arm down. When Bagwell succeeded in pulling Galvan's hand out of his pocket, he saw that Galvan was holding a chrome-colored hand gun and had his finger on the trigger. Rogers and Davenport heard Bagwell yell that Galvan had a gun. Davenport saw the gun and Galvan's finger on the trigger, as well. Davenport then joined the struggle to obtain control of the weapon in Galvan's hand.

Each officer testified that while Davenport and Bagwell were struggling to obtain

possession and control of the firearm in Galvan's hand, Galvan was moving his arm, hand, and the gun along the ground, trying to free himself from the grip of the officers. Each officer also testified that, at various times, he thought the gun was pointed in his direction and was in fear of his life or felt threatened.

The evidence shows that Galvan did not "merely" possess the gun. Rather, it shows that he used it in a manner that made each officer feel threatened or that his life was in danger. In other words, it facilitated the commission of the assault by threat. Thus, the evidence is sufficient to prove both that he threatened the officers and that he used or exhibited a deadly weapon while doing so. Galvan's first issue is overruled.

## MOTION TO QUASH

In his second issue, Galvan asserts the trial court erred in denying Galvan's motion to quash the indictment. Galvan argued at trial that the indictment lacked specificity and did not set forth the offense in plain and intelligible language because it used the words "pointing a firearm" at a police officer when describing the type of threat made in each count. Thus, his argument continued, he had insufficient notice of what he was being charged with. The State then offered to abandon that specific language in all counts because, it argued, manner and means language was not necessary in the indictment for aggravated assault. Galvan disagreed and argued that, with or without the language, the indictment lacked specificity. Galvan's motion to quash was overruled, and the State's motion to strike the disputed language was

granted.

*Law*

The sufficiency of an indictment is a question of law. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). Thus, an appellate court reviews a trial judge's ruling on a motion to quash a charging instrument *de novo*. *Smith v. State*, 309 S.W.3d 10, 13-14 (Tex. Crim. App. 2010); *Turner v. State*, 435 S.W.3d 280, 286 (Tex. App.—Waco 2014, pet. ref'd). The charging instrument must convey sufficient notice to allow the accused to prepare his defense. *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998). A motion to quash should be granted only when the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant notice of the acts he allegedly committed. *Turner*, 435 S.W.3d at 286.

Subject to rare exceptions, an indictment tracking the language of the statute will satisfy constitutional and statutory requirements, and the State need not allege facts that are merely evidentiary in nature. *Mays*, 967 S.W.2d at 406. Those rare exceptions are where the prohibited conduct is statutorily defined to include more than one manner or means of commission or where a statute uses an undefined term of indeterminate or variable meaning and requires more specific pleading in order to notify the defendant of the nature of the charges against him. *St. Clair v. State*, 26 S.W.3d 89, 94 (Tex. App.—Waco 2000, pet. ref'd) (citing *Saathoff v. State*, 891 S.W.2d 264, 266 (Tex. Crim. App. 1994) and *State v. Mays*, 967 S.W.2d 404, 407 (Tex. Crim. App. 1998)).

Galvan was charged with aggravated assault of a public servant and was alleged to have threatened the officers with imminent bodily injury and used or exhibited a deadly weapon, that being a firearm. The indictment tracked the language of the statute. There is nothing defined or undefined in that statute as it is charged in the indictment that includes one or more manner or means of commission of the offense or requires a more specific pleading to notify Galvan of the charges against him; and Galvan points to nothing to suggest that there is. Accordingly, the trial court did not err in denying Galvan's motion to quash. Galvan's second issue is overruled.

## MOTION TO SUPPRESS-VOLUNTARINESS

Next, Galvan contends the trial court erred in overruling his motion to suppress because his recorded statement was involuntary. Galvan asserts his statement was involuntary because it was uncontroverted that he was under the influence of a large amount of medication at the time the statement was taken, the officer taking the statement never inquired about what medications Galvan was taking, and Galvan appeared "out of his mind" during the taking of the statement. *See Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008) ("fact scenarios that can raise a state-law claim of involuntariness (even though they do not raise a federal constitutional claim) include the following: (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary...").

The determination of whether a confession is voluntary is based on an

examination of the totality of circumstances surrounding its acquisition. *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). The trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses" and the evidence presented at a hearing on a motion to suppress, particularly when the motion is based on the voluntariness of a confession. *Delao v. State*, 235 S.W.3d 235, 238-39 (Tex. Crim. App. 2007); *Green v. State*, 934 S.W.2d 92, 98-99 (Tex. Crim. App. 1996). Additionally, given this vital role, great deference is accorded to the trial court's decision to admit or exclude such evidence, which will be overturned on appeal only where a flagrant abuse of discretion is shown. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford almost total deference to the trial court's determinations of historical facts, especially when those determinations involve assessment of witness credibility and demeanor. *See Masterson v. State*, 155 S.W.3d 167, 170 (Tex. Crim. App. 2005).

Texas Ranger, Don Stoner, was called to investigate the shooting of Galvan by Deputy Chief Rogers. Stoner initially visited with Galvan at the hospital on January 18, 2013, four days after the shooting. On that day, Galvan was in ICU. The nurses told Stoner that Galvan was on medication but that Galvan was stable and could understand everything; so it was fine for Stoner to ask Galvan questions. Once Stoner began asking questions, Galvan began to breath heavy as if he were hyperventilating. The nurses told Stoner that this was just an act put on by Galvan. Galvan's speech also became

lethargic, and Stoner decided to talk to Galvan at a later date.

Stoner went back to the hospital to talk to Galvan on January 24, 2013. Galvan was no longer in ICU and had been moved to a private room. Stoner asked a nurse how Galvan was doing. She replied that he was fine and was due to be released in the near future. When Stoner entered the room, Galvan was alert and attentive. He was talking to an officer in the room, and was sitting up and watching TV. Galvan's speech was not slurred, and he was able to have a normal conversation with Stoner. Galvan appeared coherent, did not appear intoxicated, and appeared to have normal mental and physical faculties.

Stoner read Galvan his statutory rights under article 38.22(2)(b) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22(2)(b) (West 2005). Galvan indicated to Stoner that he understood those rights and agreed to talk to Stoner. Stoner then recorded the interview with Galvan, which was admitted into evidence at the motion to suppress hearing. Stoner assured the trial court that he never made any promises or threats to Galvan and did not coerce Galvan in any way before Galvan made his statement.

Stoner acknowledged that, prior to the second interview, he did not talk to Galvan's doctor and did not ask about any medication Galvan may have been under the influence of at the time of the second interview. Stoner also acknowledged that during the second interview, Galvan started talking about the Freemasons following him and

that that story did not make any sense.

The trial court denied Galvan's motion to suppress. In its findings of fact and conclusions of law, the trial court found that Galvan had the mental capacity to understand and to waive his rights and that Galvan was alert, coherent, and showed no signs of confusion when he knowingly, intelligently, and voluntarily waived his rights.

Although Stoner did not talk to Galvan's doctor and did not ask about any medication Galvan may have been on prior to the admitted interview, there is nothing in the record to suggest that Galvan was incoherent and thus, his statement involuntary. Further, although Galvan started talking about the Freemasons following him, there was nothing in the record to suggest he was hallucinating, thus rendering his statement involuntary. Accordingly, based on the totality of the circumstances, the trial court did not abuse its discretion in denying Galvan's motion to suppress. Galvan's third issue is overruled.

## LESSER INCLUDED OFFENSE INSTRUCTIONS

In his last issue, Galvan contends the trial court erred in denying his request for a jury instruction on several lesser-included offenses.[1] At the charge conference, Galvan requested instructions to the jury on the lesser offenses of aggravated assault with a deadly weapon, assault by threat, and resisting arrest.

---

[1] Although Galvan mentions in the title of this issue that he also contends the trial court erred in denying his request for a voluntariness instruction, he does not brief that portion of the issue. Thus, that portion of the issue presents nothing for review and is overruled.

Courts apply the *Aguilar/Rousseau* test to determine whether an instruction on a lesser-included offense should be given to the jury. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). First, we determine if the proof necessary to establish the charged offense also includes the lesser offense. *Cavazos*, 382 S.W.3d at 382; *Hall*, 225 S.W.3d at 535-36. If this threshold is met, we then consider whether some evidence shows that if the appellant is guilty, he is guilty only of the lesser offense. *See Cavazos*, 382 S.W.3d at 382; *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011).

### Aggravated Assault with a Deadly Weapon and Assault by Threat

Galvan states in his brief that the offenses of aggravated assault with a deadly weapon and assault by threat are lesser offenses that meet the first step of the *Aguilar/Rousseau* test. The State does not dispute this assertion. Thus, assuming without deciding these offenses meet the first step of the test, we now consider whether there is some evidence that if Galvan is guilty, he is guilty only of the lesser offense.

To show that if Galvan was guilty, he was only guilty of aggravated assault with a deadly weapon, there would have to be some evidence that Galvan did not know the officers were public servants lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (West 2011). However, there was no testimony to suggest that any of the officers were not identifiable as public servants and were not discharging an official duty. Accordingly, the trial court did not err in denying Galvan's request for a

jury instruction on the offense of aggravated assault with a deadly weapon.

To show that if Galvan was guilty, he was only guilty of assault by threat, there would, again, have to be some evidence that Galvan did not know the officers were public servants lawfully discharging an official duty, *see* TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (West 2011), or that no deadly weapon was used or exhibited, *see id.* at (a)(2). Again, there was no testimony to suggest that the officers were not identifiable as public servants and were not discharging an official duty or that a deadly weapon was not used or exhibited. Accordingly, the trial court did not err in denying Galvan's request for a jury instruction on the offense of assault by threat.

*Resisting Arrest*

Galvan also states in his brief that resisting arrest is a lesser offense of aggravated assault by threat of a public servant and meets the first step of the *Aguilar/Rousseau* test. However, as charged in this case, the offense of resisting arrest is not a lesser-included offense of the charged offense of aggravated assault against a public servant. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006); *Brumbalow v. State*, 432 S.W.3d 348, 352 (Tex. App.—Waco 2014, no pet.). Because the first step of the *Aguilar/Rousseau* test was not met, we need not discuss the second step. *See Brumbalow*, 432 S.W.3d at 352. Accordingly, the trial court did not err in denying Galvan's request for a jury instruction on the offense of resisting arrest.

Because the trial court did not err in denying the requested lesser offense instructions, Galvan's fourth and final issue is overruled.

CONCLUSION

Having overruled each issue on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed November 26, 2014
Do not publish
[CRPM]

