# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00352-CR

**Tonieka Renea McIlvennia, AKA Tonieka Reanea McIlvenna,
AKA Tonieka Renea Burnside, AKA Tonieka James, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
## NO. 71094, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Tonieka Renea McIlvennia, AKA Tonieka Reanea McIlvenna AKA Tonieka Renea Burnside AKA Tonieka James, guilty of aggravated assault on a public servant and evading detention with a vehicle. *See* Tex. Penal Code §§ 22.02(a)(2), (b)(2)(B), 38.04. The trial court assessed appellant's punishment at confinement in the Texas Department of Criminal Justice 25 for years on the assault offense and ten years on the evading offense, ordering the sentences to run concurrently. *See id.* §§ 12.32, 12.425. In five points of error, appellant challenges the sufficiency of the evidence and complains about error in the jury charge. We affirm the trial court's judgments of conviction.

# BACKGROUND

Officer John Jones, an officer with the Killeen Police Department, was on patrol when he observed a car that had been reported stolen pull into a convenience store parking lot. He confirmed that the car was still listed as stolen and called for back-up. He pulled in and parked his marked patrol car at an angle behind the stolen car. He saw the driver go inside the store, but knew a passenger remained in the car. Moments later he observed the driver come out of the store, go to the passenger side of the car, and lean over to speak to the passenger. The evidence at trial demonstrated that appellant was the passenger in the stolen car. Officer Jones instituted a "high-risk felony stop," approaching the driver on the passenger side of the car. He was wearing his police uniform with departmental patches on the sleeves, had his police badge displayed, and had his service weapon drawn. He directed the driver to turn around, back toward him, and get down on his knees. The driver complied with the officer's commands.

As Officer Jones was initiating the detention of the driver, Officer Cristina Ocampo, also with the Killeen Police Department, arrived in her marked patrol car, with emergency lights flashing, to assist. Like Officer Jones, Officer Ocampo was wearing her police uniform with departmental patches on the sleeves and had her police badge displayed. Officer Ocampo handcuffed the driver and placed him in her patrol car. As the officers detained and effected the arrest of the driver, appellant moved from the passenger seat of the stolen car to the driver seat. Officer Jones then moved to the driver side of the car. Appellant, who was talking on her cell phone, rolled down the driver side window and inquired about what was happening. Officer Jones still had

2

his weapon drawn and instructed appellant to get off the phone and get out of the car. He repeated this command several times but appellant did not comply.

After she finished arresting the driver, Officer Ocampo joined Officer Jones on the driver side of the car. Both officers repeated their command for appellant to get off the phone and exit the vehicle but appellant still did not comply. Finally, both officers approached the car together and Officer Jones opened the car door. He warned appellant that if she did not get out of the car she would be tased. At this point, the car door was wide open and both officers were standing at the door jamb. Appellant still did not comply with the officers' commands. Officer Jones then reached into the car to grab appellant in an attempt to remove her from the car. Appellant resisted, and the car lurched forward then rolled back slightly. The officers then heard the engine rev. Officer Ocampo ordered appellant to put the car in park. Officer Jones told Officer Ocampo to tase appellant. Officer Ocampo, standing within an arm's reach of appellant, tased appellant. At that point, the car accelerated rapidly backwards. The driver side door struck Officer Ocampo briefly as she moved to get out of the way and swept Office Jones with it, knocking him to the ground. Appellant executed a donut turn in the parking lot and then backed out onto the street. Officer Ocampo ran after the car with her weapon drawn yelling for appellant to stop. Instead, appellant sped off, screeching her tires, driving through a four-way stop without stopping. Officer Ocampo returned to assist Officer Jones, who appeared to be "lifeless" as he lay on the ground.[1] Other officers and emergency medical personnel responded to the scene. The stolen car,

---

[1] Officer Jones suffered a dislocated and fractured shoulder, which required five months of physical therapy before he was allowed to return to work after six months. At the time of trial, two and a half years later, his injuries were still not completely healed.

with Taser leads coming from the driver side door, was found abandoned about one mile from the convenience store approximately one hour later. Appellant was apprehended five days later.

## DISCUSSION

Appellant raises five points of error: two challenging the sufficiency of the evidence, three complaining about error in the jury charge.

### Sufficiency of the Evidence

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). In our sufficiency review we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Finley v. State*, 449 S.W.3d 145, 147 (Tex. App.—Austin 2014), *aff'd*, 484 S.W.3d 926, (Tex. Crim. App. 2016). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable

4

inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) ("Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally.").

To determine whether the State has met its evidentiary burden of proving a defendant guilty beyond a reasonable doubt, we compare the elements of the offense as defined by the hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *Felder v. State*, No. 03-13-00707-CR, 2014 WL 7475237, at *2 (Tex. App.—Austin Dec. 19, 2014, no pet.) (mem. op., not designated for publication). A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Thomas*, 444 S.W.3d at 8 (quoting *Malik*, 953 S.W.2d at 240); *Roberson v. State*, 420 S.W.3d 832, 840 (Tex. Crim. App. 2013). The law as authorized by the indictment consists of the statutory elements of the charged offense as modified by the factual details and legal theories contained in the indictment. *Patel v. State*, No. 03-14-00238-CR, 2016 WL 2732230, at *2 (Tex. App.—Austin May 4, 2016, no pet. h.) (mem. op., not designated for publication); *see Thomas*, 444 S.W.3d at 8 ("The 'law as authorized by the indictment' consists of the statutory elements of the offense and those elements as modified by the indictment."); *Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013)

("The law as 'authorized by the indictment' includes the statutory elements of the offense 'as modified by the charging instrument.'").

*Aggravated Assault on a Public Servant*

In her first point of error, appellant argues that the evidence was insufficient to support her conviction for aggravated assault on a public servant because the evidence failed to show that Officer John Jones was a public servant as defined by statute.

As relevant to the indicted charge here, a person commits aggravated assault if she "intentionally, knowingly, or recklessly causes bodily injury to another" and "uses or exhibits a deadly weapon during the commission of the assault," *see* Tex. Penal Code §§ 22.01(a)(1), 22.02(a)(2), and commits the offense against someone she knows is a public servant while the public servant is lawfully discharging an official duty, *see id.* § 22.02(b)(2)(B). The Texas Penal Code defines "public servant" as, in relevant part, "a person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of government." *See id.* § 1.07(41). The term "government" means "(A) the state; (B) a county, municipality, or political subdivision of the state; or (C) any branch or agency of the state, a county, municipality, or political subdivision." *See id.* § 1.07(24). The record contains evidence demonstrating that at the time of the alleged assault offense, Jones was employed as a patrol officer with the Killeen Police Department. Appellant never disputed this evidence either below or on appeal. Instead, while acknowledging this evidence, she maintains that "the State did nothing to connect this evidence with anything in the . . . statutory definition of public servant."

6

However, Jones's testimony—that he was a patrol officer and peace officer employed with the Killeen Police Department at the time of the assault—demonstrated that Jones was both an officer and employee of a municipality (as well as an agency of a municipality) when the aggravated assault was committed. Because we measure the sufficiency of the evidence against the hypothetically correct jury charge, *see Thomas*, 444 S.W.3d at 8, this evidence was sufficient to establish that Officer Jones was a public servant within the meaning of the Penal Code. *See Carr v. State*, No. 14-09-00322-CR, 2010 WL 2835663, at *3–4 (Tex. App.—Houston [14th Dist.] July 20, 2010, pet. ref'd) (mem. op., not designated for publication) (observing that "many courts have held that the term 'public servant' necessarily contemplates a police officer"); *Campbell v. State*, 128 S.W.3d 662, 668 (Tex. App.—Waco 2003, no pet.), *overruled on other grounds by Brumbalow v. State*, 432 S.W.3d 348 (Tex. App.—Waco 2014, no pet.) (recognizing that "'public servant' is a broad term including 'peace officers' and 'police officers'"); *Carriere v. State*, 84 S.W.3d 753, 757 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (noting that "[a]lthough not explicitly included in the Penal Code definition of a 'public servant,' courts have interpreted public servant to include a police officer," and holding that police officer is public servant within meaning of criminal retaliation statute); *Hoitt v. State*, 28 S.W.3d 162, 165 (Tex. App.—Texarkana 2000), *pet. dism'd, improvidently granted*, 65 S.W.3d 59 (Tex. Crim. App. 2001) ("A municipal police officer is a public servant within the meaning of the Penal Code."); *McCoy v. State*, 932 S.W.2d 720, 723 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding that municipal police officer is public servant for purposes of statutes criminalizing aggravated assault and retaliation against public servant).

Accordingly, the evidence was sufficient to support appellant's conviction for aggravated assault on a public servant. We overrule appellant's first point of error.

*Evading Detention with a Vehicle*

In her fifth point of error, appellant contends that the evidence was insufficient to support her conviction for evading detention with a vehicle because the evidence failed to show that she knew that Cristina Ocampo was a police officer attempting to detain her.

As relevant to the evading detention alleged here, a person commits an offense if she intentionally flees from a person she knows is a peace officer attempting lawfully to arrest or detain her. *See* Tex. Penal Code § 38.04(a). The offense is a third degree felony if the defendant uses a vehicle while in flight. *See id.* § 38.04(b)(2)(A). Appellant does not dispute that as a police officer for the City of Killeen, Ocampo was a peace officer for purposes of the evading detention statute. *See id.* § 1.07(36); Tex. Code Crim. Proc. art. 2.12, § 3. Rather, after chronologically detailing the two dash-cam videos from the patrol cars, appellant asserts that the evidence failed to prove "that [appellant] was even aware that Officer Ocampo was present, let alone that she was a police officer attempting to detain [her]." Appellant's claim, however, is based on a limited review of only a portion of the evidence, which is contrary to the well-established procedure for conducting a legal sufficiency review. *See Clayton*, 235 S.W.3d at 778 (in conducting legal sufficiency review, courts assess "all of the evidence"); *Boston v. State*, 373 S.W.3d 832, 836 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013) ("In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense.") (citations omitted).

8

The evidence at trial—which included the testimony of the police officers in addition to the dash-cam videos from their patrol cars—showed that appellant repeatedly refused to comply with the officers' commands to get out of the car. Both officers approached the car together. After Officer Jones opened the car door, both officers stood together at the door jamb. Officer Jones had his gun drawn and Officer Ocampo had her Taser drawn when Officer Jones warned appellant to get out of the car or she would be tased. When appellant still did not get out of the car, Officer Jones reached into the car to pull her out while Officer Ocampo again told her to get out of the car. Appellant resisted being removed from the car and moved both hands toward the passenger side of the car, making furtive movements. As she resisted, the car lurched forward, then rolled back. The officers then heard the engine rev. Officer Jones yelled for Officer Ocampo to tase appellant and Officer Ocampo yelled at appellant to put the car in park. Appellant responded to Officer Ocampo stating that "[she was] trying." Officer Ocampo was standing immediately next to Officer Jones in the door jamb, within an arm's reach of appellant, about one foot away, when she tased appellant. At that point, the car accelerated rapidly backwards, striking Officer Ocampo briefly as she moved to get out of the way. Appellant executed a donut turn in the parking lot, backed out onto the street, and sped off as Officer Ocampo ran after the car with her weapon drawn yelling for appellant to stop.

Officer Ocampo was dressed in her police uniform as she stood at the door jamb next to Officer Jones ordering appellant to get out of the car. She was within an arm's reach of appellant when she commanded her to put the car in park. Appellant's response—"I'm trying. I'm trying."—demonstrates that she was aware of Officer Ocampo's presence. Officer Ocampo tased appellant from about one foot away after appellant repeatedly refused to comply with verbal

9

commands from both Officer Jones and Officer Ocampo. As appellant backed up the car and drove off, Officer Ocampo ran after her yelling for her to stop. From the evidence of these interactions between appellant and Officer Ocampo, the jury could reasonably conclude that appellant knew that Officer Ocampo was trying to detain her.

Evidence is sufficient to support a conviction when, based on the evidence and reasonable inferences therefrom, any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). Based on the evidence presented at trial and the reasonable inferences therefrom, we conclude that the jury could have rationally found beyond a reasonable doubt that appellant knew that Officer Ocampo was a peace officer attempting to detain her. Therefore, the evidence was sufficient to support appellant's conviction for evading detention with a vehicle. We overrule appellant's fifth point of error.

## Jury Charge Error

During the charge conference at the end of the guilt-innocence phase of trial, appellant did not object to the court's charge or request any instructions. On appeal, she raises three points of error complaining about error in the court's jury charge. She asserts that the addition of an instruction to the statutory definition of "public servant" constituted an improper comment on the weight of the evidence, the omission of a statutory definition of "government" was error, and the failure to give the statutory instructions regarding the law on statutory presumptions was error.

*Standard of Review*

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If the jury charge error has been properly preserved by an objection or request for instruction, reversal is required if the appellant has suffered "some harm" from the error. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171; *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("If there was error and appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the defendant,' which we have defined to mean that there is 'some harm.'"). When the charge error was not properly preserved by an objection or request for instruction, the error must be "fundamental" and requires reversal only if it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Almanza*, 686 S.W.2d at 171.

**The Alleged Error**

*Addition to Public Servant Definition*

In her second point of error, appellant complains about the trial court's definition of "public servant" in the abstract portion of the jury charge, which set forth the following definition: "Public servant means a person elected, selected, appointed, employed or otherwise designated as

11

an officer, employee or agent of government. A police officer is a public servant." The first sentence is consistent with the statutory definition of "public servant" in the Penal Code. *See* Tex. Penal Code § 1.07(41)(A). The second sentence, however, is not contained in the statutory definition. Appellant argues that the addition of this sentence constituted an impermissible comment on the weight of the evidence.

Juries are free to "consider and evaluate the evidence in whatever way they consider it relevant to the statutory offenses." *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (quoting *Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007)). Accordingly, the Code of Criminal Procedure requires that instructions to the jury be limited to setting forth the law applicable to the case and that they not express any opinion as to the weight of the evidence. *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015), *cert. denied*, 15-1250, 2016 WL 1381480 (U.S. May 23, 2016); *see* Tex. Code Crim. Proc. art. 36.14 (trial court is required to give jury written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [its] charge calculated to arouse the sympathy or excite the passions of the jury"). "[S]pecial, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge." *Kirsch*, 357 S.W.3d at 651 (quoting *Walters*, 247 S.W.3d at 211). A non-statutory instruction constitutes a prohibited comment on the weight of the evidence if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense. *Walters*, 247 S.W.3d at 212; *see Kirsch*, 357 S.W.3d at 651. Further, "[a]n

12

instruction, albeit facially neutral and legally accurate, may nevertheless constitute an improper comment on the weight of the evidence." *Kirsch*, 357 S.W.3d at 651; *see, e.g.*, *Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003).

Here, the complained-of instruction—that a police officer is a public servant—is not grounded in the Penal Code, the content of the instruction is covered by the general charge to the jury (in the statutory definition of "public servant"), and the proposed instruction focused the jury's attention on a specific type of evidence that may support an element of the offense. *See Walters*, 247 S.W.3d at 212. Although the trial court's instruction was a correct, neutral statement of the law regarding police officers as public servants and merely incorporated existing case law,[2] it impinged on the jury's fact-finding authority by "improperly tell[ing] the jury how to consider certain evidence before it." *See Walters*, 247 S.W.3d at 214. Further, while the instruction set forth in the charge is an appropriate definition for an appellate court to apply in assessing the sufficiency of the evidence to support the "public servant" element, instructing the jurors as to that definition in this case impermissibly guided their understanding of the term. *See Kirsch*, 357 S.W.3d at 652; *see also Carr*, 2010 WL 2835663, at *9 ("While the instruction, 'a public servant means a police officer,'

---

[2] We noted this case law in our discussion of appellant's sufficiency challenge in her first point of error, *see supra* p. 7: *Carr v. State*, No. 14-09-00322-CR, 2010 WL 2835663, at *3–4 (Tex. App.—Houston [14th Dist.] July 20, 2010, pet. ref'd) (mem. op., not designated for publication); *Campbell v. State*, 128 S.W.3d 662, 668 (Tex. App.—Waco 2003, no pet.), *overruled on other grounds by Brumbalow v. State*, 432 S.W.3d 348 (Tex. App.—Waco 2014, no pet.); *Carriere v. State*, 84 S.W.3d 753, 757 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Hoitt v. State*, 28 S.W.3d 162, 165 (Tex. App.—Texarkana 2000), *pet. dism'd, improvidently granted*, 65 S.W.3d 59 (Tex. Crim. App. 2001); *McCoy v. State*, 932 S.W.2d 720, 723 (Tex. App.—Fort Worth 1996, pet. ref'd).

constitutes an accurate statement of law, it magnifies a particular fact: a police officer is a public servant.").

Whether appellant's assault was committed against a public servant was a question of fact to be resolved by the jury. *See* Tex. Code Crim. Proc. art. 36.13; *Brown*, 122 S.W.3d at 798–99. It was the responsibility of the advocates to argue or refute that the evidence supported that element of the offense. *See Kirsch*, 357 S.W.3d at 652; *Walters*, 247 S.W.3d at 214; *Brown*, 122 S.W.3d at 798-99. Although the instruction did not "pluck out" any specific piece of evidence for special attention, *see, e.g.*, *Fabela v. State*, 431 S.W.3d 190, 196 (Tex. App.—Amarillo 2014, pet. dism'd) (trial court's instruction that deputy was peace officer—"You are instructed that Chief Deputy Joe Orozco is a peace officer."—when deputy's status as peace officer was element of offense constituted comment on evidence and was erroneous), it did improperly focus the jury on the type of evidence that would support a finding that Officer Jones was a public servant. *See Kirsch*, 357 S.W.3d at 652; *Walters*, 247 S.W.3d at 214; *Brown*, 122 S.W.3d at 802. Accordingly, we conclude that the trial court's inclusion of the additional sentence to the statutory definition of "public servant" in the jury charge was error. *See Kirsch*, 357 S.W.3d at 651 ("With only limited exceptions, the trial court may not include an instruction that focuses the jury's attention on a specific type of evidence that may support a finding of an element of an offense."); *Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008) ("Even a seemingly neutral instruction may constitute an impermissible comment on the weight of the evidence because such an instruction singles out that particular piece of evidence for special attention.").

*Omission of Government Definition*

In her third point of error, appellant complains that the trial court's jury charge was erroneous because it did not include the statutory definition of "government" in the abstract portion of the charge.

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case," which requires that the jury be instructed on each element of the offense charged. *See* Tex. Code Crim. Proc. art. 36.14; *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) ("Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense."). The "law applicable to the case" includes the statutory definitions that affect the meaning of the elements of the offense. *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009). Thus, a trial court must communicate to the jury each statutory definition related to the charged offense. *See Villarreal*, 286 S.W.3d at 329; *see also Nejnaoui v. State*, 44 S.W.3d 111, 119 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("[T]he trial court must define any legal phrase that a jury must necessarily use in properly resolving the issues, and provide the statutory definition if available."). The court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Id.* at 488 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

In this case, appellant was charged with aggravated assault on a public servant. As noted previously, the Texas Penal Code defines "public servant," in relevant part, as "a person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of government." *See id.* § 1.07(41). Again, the Penal Code defines the term "government" to mean "(A) the state; (B) a county, municipality, or political subdivision of the state; or (C) any branch or agency of the state, a county, municipality, or political subdivision." *See id.* § 1.07(24).

Because the term "government" has been statutorily defined in the Penal Code and that term affects the meaning of the "public servant" element of the charged assault offense, *see Ouellette*, 353 S.W.3d at 870, the trial court's failure to include the definition in the jury charge here was error. *See, e.g.*, *Leach v. State*, No. 03-13-00784-CR, 2015 WL 8607060, at *2 (Tex. App.—Austin Dec. 9, 2015, no pet.) (mem. op., not designated for publication) (trial court's failure to include statutorily defined term "dating relationship" in jury charge for family-violence-assault-by-strangulation offense was error).

*Instructions Regarding Statutory Presumption*

Section 22.02(c) of the Texas Penal Code provides that "[t]he actor is presumed to have known the person assaulted was a public servant or a security officer if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant or status as a security officer." Tex. Penal Code § 22.02(c). In the jury charge, the trial court instructed the jury on this presumption by quoting the statutory section almost verbatim, omitting the reference to status as a security officer. In her fourth point of error, appellant contends that the court fundamentally

16

erred by failing to instruct the jury that the statutory presumption provided by section 22.02(c) of the Penal Code is a permissive presumption.

Mandatory presumptions are unconstitutional because they relieve the State of its constitutionally-required burden of proving every element of the offense beyond a reasonable doubt. *Garrett v. State*, 220 S.W.3d 926, 930 (Tex. Crim. App. 2007); *Brown*, 122 S.W.3d at 799 ("Mandatory presumptions violate due process by shifting the burden of production or proof to a criminal defendant on a critical fact or element of the offense."). A permissive presumption, on the other hand, allows but does not require the fact finder to find the elemental fact on proof of the predicate fact, and places no burden on the accused to disprove the elemental fact. *Garrett*, 220 S.W.3d at 931 n.5; *Tottenham v. State*, 285 S.W.3d 19, 31 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Instructions pursuant to section 2.05(a)(2) of the Texas Penal Code—which require the jury to be instructed on the permissive nature of any statutory presumption favorable to the State and how the presumption relates to the State's burden of proof—convert a mandatory presumption into a permissive presumption.[3]  *Id.* at 931; *Ramirez-Memije v. State*, 466 S.W.3d 894, 897 (Tex.

---

[3]  Section 2.05(a)(2) of the Texas Penal Code provides:

(2)  if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

(A)  that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B)  that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C)  that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

17

App.—Houston [14th Dist.] 2015, no pet.). A jury charge containing a statutory presumption that benefits the State must also contain the instructions required by Penal Code section 2.05(a)(2). *See Hollander v. State*, 414 S.W.3d 746, 754 (Tex. Crim. App. 2013) (Cochran, J., concurring).

In the present case, the court's jury charge did not include the instructions from section 2.05(a)(2) of the Penal Code to explain to the jury how to implement the presumption submitted. The trial court's failure to include these instructions was error. *See Hollander*, 414 S.W.3d at 749 n.9; *Ramirez-Memije*, 466 S.W.3d at 897; *see also Tottenham*, 285 S.W.3d at 31 ("The trial court was mandated to deliver a charge setting forth the law applicable to the case, and a section 2.05(a)(2) instruction was both statutorily and constitutionally required.").

### *Harm Analysis*

Having found error in the jury charge, we must next consider whether appellant was harmed by the error. Appellant concedes that she did not preserve the complained-of jury charge errors at trial—she did not object to the inclusion of the instruction that a police officer is a public servant, she did not object to the omission of the statutory definition of "government" (or request its inclusion), and she did not object to the omission of the section 2.05(a)(2) instructions concerning the statutory presumption (or request their inclusion). Consequently, reversal is required only if the errors resulted in egregious harm. *See State v. Ambrose*, — S.W.3d —, No. PD-0143-15,

---

(D)     if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

Tex. Penal Code § 2.05(a)(2).

2016 WL 1696455, at \*5 (Tex. Crim. App. Apr. 27, 2016) (reaffirming that under precedent of Court of Criminal Appeals "unpreserved jury-charge error does not require a new trial . . . unless the error causes 'egregious harm'"); *Garrett*, 220 S.W.3d at 932 (noting that mandatory-presumption errors in jury charge are subject to harmless-error review, and approving appellate court's analysis regarding egregious harm).

Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)); *see Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) ("[Egregious harm] is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial."). We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Villarreal*, 453 S.W.3d at 433; *see Marshall*, 479 S.W.3d at 843 ("[C]ourts are required to examine the relevant portions of the *entire* record to determine whether appellant suffered actual harm, as opposed to theoretical harm, as a result of the error."); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) ("An egregious harm determination must be based on a finding of actual rather than theoretical harm."). In examining the record to determine whether charge error has resulted in egregious harm, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and

weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.

*The Jury Charge*

Abstract, or definitional, paragraphs in a jury charge serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraph, which is that portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations. *Vasquez*, 389 S.W.3d at 366; *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012); *see Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). "It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw*, 378 S.W.3d at 466.

In this case, regarding the alleged aggravated assault offense, the abstract portion of the jury charge read as follows:

> A person commits the offense of aggravated assault against a public servant if the person commits an assault and uses or exhibits a deadly weapon to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty.
> A person commits an assault if the person intentionally, knowingly or recklessly causes bodily injury to another.

The application paragraph of the charge instructed the jury that if it found from the evidence beyond a reasonable doubt that appellant

20

did then and there intentionally, knowingly or recklessly cause bodily injury to John Jones by striking John Jones with a motor vehicle or by placing a motor vehicle in gear and striking John Jones with the motor vehicle, and [appellant] did then and there use or exhibit a deadly weapon, to-wit: a motor vehicle, during the commission of said assault, and [appellant] did then and there know that the said John Jones was then and there a public servant, to-wit: a police officer, and that the said John Jones was then and there lawfully discharging an official duty, to-wit: attempting to detain [appellant] then you will find [appellant] guilty of the offense of aggravated assault against a public servant as charged in count one of the indictment.

The language contained in this application paragraph substantially tracks the language of the relevant subsections of section 22.02 of the Penal Code, which is the operative statute in this case, and effectively restricted the jury's deliberations to the allegations in the indictment. *See* Tex. Penal Code § 22.02(a)(2), (b)(2)(B). Thus, the trial court committed no error with regard to the application paragraph in the jury charge.

"Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). Error in the abstract portion of the charge will result in reversible error only when it constitutes "an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph." *Crenshaw*, 378 S.W.3d at 466 (citing *Plata*, 926 S.W.2d at 302). The inclusion of a merely superfluous abstraction—one not necessary to an understanding of concepts or terms contained in the application paragraph—"never produces reversible error in the court's charge because it has no effect on the jury's ability to implement fairly and accurately the commands of the application paragraph or paragraphs." *Plata*, 926 S.W.2d at 302–03. Likewise, the failure to give an abstract instruction, or definition, is reversible "only when such an instruction

[or definition] is necessary to a correct or complete understanding of concepts or terms in the application part of the charge." *Id.* at 302.

In this case, even though the jury charge contained error in the abstract protion of the charge—the addition of a superfluous abstract instruction to the definition of "public servant" and the omission of the statutory definition of the term "government"—the balance of the charge adequately set forth the elements of the offense and the application paragraph was legally correct in its application of the law to the facts of the case. The trial court properly instructed the jury in both the abstract portion and the application paragraph that to convict appellant of the assault offense charged it must find that the aggravated assault was committed against a public servant. Thus, as to these charge errors—the inclusion of the superfluous abstract instruction and the omission of the statutory definition—the jury charge does not support a finding of egregious harm.

However, regarding the omitted section 2.05(a)(2) instructions concerning the law on the statutory presumption, nothing in the jury charge informed the jury about the permissive nature of the statutory presumption. *See* Tex. Penal Code § 2.05(a)(2); *see, e.g.*, *Ramirez-Memije*, 466 S.W.3d at 898 ("[N]othing in the jury charge informed the jury that it was not bound to use the presumption."). In addition, nothing in the jury charge informed the jury of the State's burden of proof on the facts underlying the statutory presumption. *See* Tex. Penal Code § 2.05(a)(2); *see, e.g.*, *Hollander*, 414 S.W.3d at 750 ("Nowhere did the jury charge specifically inform the jurors of the degree of confidence to which they must be convinced of the facts underlying the presumption before they could return a guilty verdict."). Although the jury charge appropriately instructed the jury about the State's general burden to prove all the elements of the offense beyond a reasonable doubt, the

22

Court of Criminal Appeals has concluded that this general instruction alone is insufficient to remedy or ameliorate the error. *See id.* ("Such a general instruction fails to educate the jurors with respect to the level of confidence they must have in the verity of the predicate facts before they may rely on the presumption to convict."). Accordingly, as to this charge error, the jury charge supports a finding egregious harm. *See Hollander*, 414 S.W.3d at 750; *Ramirez-Memije*, 466 S.W.3d at 898–902.

*State of the Evidence*

With regard to the second factor, appellant's entire argument concerning the state of the evidence simply refers to her sufficiency claim in her first point of error. *See Villarreal*, 453 S.W.3d at 433 (setting out factors to consider when reveiwing for egregious harm). It fails to address the state of the evidence adduced at trial.

Our review of the evidence at trial reveals that the undisputed evidence demonstrated that Officer Jones was a public servant. He testified that he was a police officer and peace officer employed by the City of Killeen. In addition, the evidence—both his testimony and the dash-cam video—reflected that during his encounter with appellant Officer Jones was wearing his official police uniform that had departmental patches on it and also had his badge displayed.

There was no contradictory evidence presented. Appellant never attempted to dispute Officer Jones's status as a public servant. She did not dispute the officer's testimony about his employment as a patrol officer with the Killeen Police Department or suggest that the video, which clearly shows he is a police officer, was inaccurate. Appellant's sole defense was that she did not act voluntarily or with the requisite mental state because she had been tased; her defense was not in any way related to Officer Jones's status as a public servant (or lack thereof).

23

Because the evidence demonstrating Officer Jones's status as a public servant (also the evidence supporting the predicate fact for the statutory presumption) was overwhelming and uncontested, we conclude that the state of the evidence does not support a finding of egregious harm.

*Jury Arguments*

Next, we look at the final arguments presented by the State and appellant's attorney. *See Villarreal*, 453 S.W.3d at 433 (including arguments of counsel as a factor for consideration in egregious harm analysis). During the State's closing argument, the prosecutor commented that none of the elements of the aggravated assault offense, with the exception of appellant's mental state, were in dispute. She argued that the evidence proved all of the elements of the assault offense charged, including that John Jones was a "public servant:"

> What do we know for a fact? We know John Jones suffered bodily injury on June 11th. We know that he was a peace officer. He's a public servant. Public servant is a police officer. And we know that he was attempting to detain the defendant on that day. The only thing that they are going to argue is her mental state: Whether what she did was intentional, was it knowing, or was it reckless.

It is unclear whether, with that statement, the prosecutor was referring to the superfluous abstract instruction added to the "public servant" definition in the jury charge ("A police officer is a public servant."), arguing the law (that as an officer or employee of a municipality or agency of the municipality, a city police officer qualifies as a public servant), or discussing the evidence presented at trial (that because John Jones is a police officer for the City of Killeen, he is a public servant). In any event, we note that this brief and minimal statement was the only reference to public servant during jury argument. Moreover, it was not contrary to or inconsistent with the statutory

24

definitions of "public servant" or "government" and does not mention or discuss the statutory public servant presumption.

In his closing argument, defense counsel focused entirely on the defensive theory—that appellant's conduct was involuntary or accidental (and therefore not intentional, knowing, or reckless) because she had been tased—and never addressed the issue of whether Officer Jones was a public servant.

Thus, although there was a very brief mention of Officer Jones's status as a public servant by the State, neither the State nor appellant argued the definition of either "public servant" or "government" or suggested that they were anything other than as defined by the Penal Code. Further, the parties did not mention, and certainly did not emphasize, the statutory presumption or reinforce it at all. The State's jury argument focused on appellant's mental state at the time she struck Officer Jones with the stolen car—in response to appellant's argument, which focused entirely on her defensive theory that she did not volitionally hit the officer. The arguments of counsel do not support a finding of egregious harm.

*Other Relevant Factors*

As to the fourth factor, our review of the record has disclosed no other relevant information that requires our consideration in the egregious harm analysis.

*Conclusion Regarding Harm*

Based on our review of the record in this case, we hold that no egregious harm resulted from the complained-of errors in the jury charge. *See Gelinas v. State*, 398 S.W.3d 703, 710

25

(Tex. Crim. App. 2013) (reaffirming that *Almanza* harm analysis "is a fact specific one which should be done on a case-by-case basis").

The record in this case contains unquestionable evidence—including Officer Jones's testimony and the dash-cam video from his patrol car—that overwhelmingly established Officer Jones's status as a "public servant," as that term is statutorily defined. Further, the record clearly establishes that no dispute existed as to what constituted a public servant, nor was there any dispute about whether the evidentiary facts sufficed to demonstrate that Office Jones, a municipal police officer and peace officer, was a public servant.

On this record, in view of the jury charge submitted, the uncontroverted evidence regarding Officer Jones's status as a public servant, and the arguments of counsel, we conclude that although the trial court erred by adding an instruction to the statutory definition of "public servant" and by omitting the statutory definition of "government," such errors in the jury charge did not deny appellant a fair and impartial trial. Appellant did not suffer egregious harm as a result of these charge errors. Accordingly, we overrule appellant's second and third points of error.

Similarly, we find that egregious harm did not result from the omission of the section 2.05(a)(2) presumption instructions. In undertaking our review, we are mindful of Judge Cochran's observation in *Hollander*: "There is a grave likelihood that a jury charge that does not contain the [Section] 2.05(a)(2) instructions will cause egregious harm to a defendant because of the serious constitutional pitfalls involved in using evidentiary presumptions. Generally speaking, jury instruction error involving presumptions that appear to be mandatory will cause the defendant 'egregious harm' because they violate the constitutional requirement that the State prove every

26

element of an offense beyond a reasonable doubt." *Hollander*, 414 S.W.3d at 756 (Cochran, J., concurring). However, "[i]n an egregious-harm analysis [for the omission of the section 2.05(a)(2) presumption instructions], the question is not simply whether, when viewed in the light most favorable to the verdict, the jury *could* rationally have found predicate facts to a level of confidence beyond a reasonable doubt. Instead, a reviewing court must evaluate the likelihood, considering the record as a whole, that a properly instructed jury *would* have found the predicate facts to the requisite level of confidence." *Hollander*, 414 S.W.3d at 751. Given the overwhelming and undisputed evidence in this case, it would not have been rational for a jury to harbor a reasonable doubt that the State had established the predicate fact in support of the statutory presumption, *i.e.*, that Officer Jones was a public servant. *Cf. id.* at 752. Appellant did not suffer egregious harm as a result of this charge error. Therefore, we overrule appellant's fourth point of error.

## CONCLUSION

Having concluded that the evidence is sufficient to support the jury's verdicts of guilt and that the complained-of errors in the jury charge did not cause appellant egregious harm, we affirm the trial court's judgments of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed: June 10, 2016

Do Not Publish

27